IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON C. LONDON, | ) | |
|     Petitioner, | ) | Civil Action No. 07-10 Erie |
| | ) | |
|     v. | ) | |
| | ) | District Judge McLaughlin |
| JONATHAN C. MINER, et al., | ) | Chief Magistrate Judge Baxter |
|     Respondents. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.  REPORT**

On May 18, 2001, a jury empaneled by the Court of Common Pleas of Erie County convicted Petitioner Aaron C. London of conspiracy to commit robbery and of making false reports. On June 18, 2001, the Honorable Michael E. Dunlavey sentenced him to an aggregate term of five and one-half years to eleven years imprisonment, to be served consecutive to any sentence he received in the federal court system.[1]

Currently pending before this Court is Petitioner's *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. (Document # 7). He has set forth his claims more fully in a Memorandum of Law. (Document # 4). He challenges the constitutionality of his judgment of sentence, and in support he contends:

> 1.  He received ineffective assistance of counsel in violation of his Sixth Amendment rights because: (a) his pre-trial counsel, Mark Richmond, Esquire, failed to file a timely suppression motion and argue that he was subjected to an unreasonable search and seizure; (b) his appellate counsel, Andrew Weinraub, Esquire,

---

[1] Petitioner is currently incarcerated at the United States Penitentiary in Florence, Colorado, and is serving a federal sentence. His projected release date from his federal sentence is June 28, 2025.

1

> failed to raise meritorious issues on direct appeal and was operating under a conflict of interest; and, (c) his subsequent appellate counsel, Ines Massella, Esquire, failed to notify him when the Superior Court denied his direct appeal;

2. He was subjected to an unreasonable search and seizure, in violation of his Fourth Amendment rights;

3. Judge Dunlavey was biased against him, in violation of his due process rights;

4. Judge Dunlavey provided the jury with unconstitutional instructions that improperly shifted the burden of proof onto the defense;

5. His confessions were coerced and were obtained in violation of his Fifth and Sixth Amendment rights; and,

6. The admission of his co-defendant Phil Franklin's November 9, 2000 statement violated his rights under the Confrontation Clause.

(See Document # 4).

Respondents have submitted the relevant transcripts and portions of the state court record ("SCR") in hard-copy format. Documents contained in the SCR are indexed 1 through 50.

### A. Relevant Factual and Procedural History

After Judge Dunlavey imposed his sentence, Petitioner, through Attorney Weinraub (who was acting as stand-by counsel), filed a direct appeal to the Superior Court of Pennsylvania. (SCR Nos. 26-29). The following five claims were raised in that appeal: (1) incriminating media attention tainted the jury pool; (2) the Commonwealth's decision not to try Petitioner jointly with his two co-defendants unfairly cast his actions out of context and in a negative light; (3) the Commonwealth exercised its peremptory juror challenges in a discriminatory manner; (4) the jury did not fairly and adequately consider all of the evidence; and, (5) Judge Dunlavey improperly pressured him not to testify.

On July 25, 2001, Judge Dunlavey issued an Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure in which he outlined why Petitioner's claims had no merit. (SCR No. 30). In August 2001, the Superior Court granted Weinraub's application to

withdraw, and Attorney Massella entered her appearance as Petitioner's counsel. See Appeal Docket Sheet, Commonwealth v. London, Docket No. 1169 WDA 2001 (Pa.Super.Ct.) In November 2001, Massella filed a brief with the Superior Court and also sought leave to withdraw under Anders v. California, 386 U.S. 738 (1967). (SCR No. 31).

On May 13, 2002, the Superior Court issued a Memorandum affirming Petitioner's judgment of sentence. (Id.) On that same date, the Superior Court granted Massella's request to withdraw. (Id.) Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court. Accordingly, his judgment of sentence became final on or around June 13, 2002, the date on which the thirty-day period to file a petition for allowance of appeal with the Pennsylvania Supreme Court expired. Pa.R.A.P. 1113(a); see Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

More than four years later, on July 12, 2006, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq*. It appears that in the PCRA motion and subsequent filings Petitioner raised some, if not all, of the claims that he is now raising in the instant federal habeas petition. (See SCR No. 43 at 2-3; SCR Nos. 38 & 45).

Judge Dunlavey appointed William J. Hathaway, Esquire, to represent Petitioner. (SCR No. 39). On August 7, 2006, Attorney Hathaway filed a "no-merit" letter and requested leave to withdraw. (SCR No. 43 at 2-3). On September 7, 2006, Judge Dunlavey issued an Order denying Petitioner's PCRA motion because it was filed untimely under the PCRA's one-year statute of limitations, 42 PA.CONST.STAT. § 9545(b). (SCR Nos. 43, 47). On that same date, Judge Dunlavey granted Attorney Hathaway's motion to withdraw. (SCR No. 46). Petitioner filed a *pro se* motion in which he asserted that his case fell within an exception to the PCRA's limitations period because Attorney Massella allegedly had failed to notify him when the Superior Court denied his direct appeal in May 2002. (SCR No. 48). He contended that he did not learn of the Superior Court's decision until July 25, 2005. (Id. at 2).

On January 4, 2007, Judge Dunlavey denied Petitioner's outstanding motion. (Id. at 50).

3

Petitioner did not pursue an appeal with the Superior Court to challenge Judge Dunlavey's decision denying PCRA relief. On or around January 17, 2007, he filed with this Court his *pro se* Petition for Writ of Habeas Corpus.

**B.    Discussion**

    **1.    The Petition is Untimely**

In their Answer, Respondents contend that Petitioner's habeas petition must be dismissed because it is untimely under the statute of limitations set forth in The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in relevant part at 28 U.S.C. § 2244(d). AEDPA requires, with a few exceptions not implicated here, that a state prisoner seeking federal habeas corpus relief file a petition in federal district court within one year after his state judgment of sentence becomes final. 28 U.S.C. § 2244(d)(1)(A). As noted above, Petitioner's judgment of sentence became final on or around June 13, 2002. Accordingly, the one-year period for filing his federal habeas corpus petition ran from June 13, 2002 until June 13, 2003. His January 2007 federal habeas petition is, thus, untimely.

AEDPA's limitations period is *statutorily tolled* during the pendency of a "properly filed" application for state post-conviction relief, 28 U.S.C. § 2244(d)(2). The state court record demonstrates that there was no state post-conviction motion pending between June 13, 2002 and June 13, 2003 that would have served to statutorily toll the limitations period. Petitioner did not file his PCRA motion until July 12, 2006, several years after the expiration of AEDPA's limitations period. Moreover, because the state court determined that the PCRA motion was untimely filed under state law, it cannot qualify as a "properly filed" petition for state post-conviction relief under 28 U.S.C. § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 413-17 (2005); Merritt v. Blaine, 326 F.3d 157, 165-66 (3d Cir. 2003).

In addition to not being entitled to *statutory tolling*, a review of the state court record also indicates that Petitioner is not entitled to the extraordinary remedy of *equitable tolling*. "Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair." Miller v. New Jersey State Dept. of Corr., 145 F.3d 616, 618-19

4

(3d Cir. 1998) (internal quotations and citations omitted). The Court of Appeals for the Third Circuit has cautioned that "courts should be sparing in their use of this doctrine, applying equitable tolling only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005) (internal quotations and citations omitted). A litigant seeking equitable tolling bears the burden of establishing two elements: (1) he was in some extraordinary way prevented from bringing his claims; and, (2) he has exercised reasonable diligence in attempting to investigate and bring his claims. Id. at 276-78. Petitioner has not established either element.

Petitioner argues that the alleged failure of Attorney Massella to inform him in a timely manner that the Superior Court had denied his direct appeal supports a finding that equitable tolling is warranted in this case. Even assuming, for the sake of argument, that Petitioner's allegation regarding Attorney Massella is true, such malfeasance does not qualify as an "extraordinary" circumstance that necessitates the application of equitable tolling. "[I]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the extraordinary circumstances required for equitable tolling." Id. at 276 (internal citations and quotations omitted) (attorney's failure to notify petitioner of the state court's disposition of his case did not amount to an "extraordinary circumstance": "LaCava fares no better by implying that counsel was derelict in failing to timely notify him of the state court's disposition. . . . LaCava advances no allegations of attorney malfeasance that would elevate this case to an 'extraordinary circumstance' sufficient to warrant equitable tolling."); Schlueter v. Varner, 384 F.3d 69, 76-78 (3d Cir. 2004) (attorney's misconduct did not constitute an extraordinary circumstance where that attorney did not keep his promise to file petitioner's PCRA motion on time and failed to communicate further with petitioner about the status of his petition.); Johnson v. Hendricks, 314 F.3d 159, 162-63 (3d Cir. 2002) (equitable tolling is not warranted where the petitioner relied on erroneous advice from his state public defender that he had one year from the date of denial of post-conviction relief to file his federal habeas petition).

Moreover, Petitioner was not diligent in asserting his claims once he allegedly learned, on July 25, 2005, that the Superior Court had denied his direct appeal. He waited almost an

entire year – until July 12, 2006 – before he sought post-conviction relief by filing his PCRA motion. And, when his PCRA proceeding before the Court of Common Pleas concluded, Petitioner failed to file an appeal with the Superior Court. Based upon these factors, this Court cannot say that he diligently pursued his claims. See, e.g., Lacava, 398 F.3d at 277.

In sum, Petitioner has not alleged facts sufficient to show that sound legal principles as well as the interests of justice demand application of the sparing doctrine of equitable tolling, and his Petition for Writ of Habeas Corpus should be dismissed as untimely under AEDPA's statute of limitations.

### 2. Petitioner's Claims Are Procedurally Defaulted

Alternatively, the Petition should be dismissed for the separate and independent reason that Petitioner has procedurally defaulted his claims.

The federal habeas corpus statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that" "the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). This "exhaustion" doctrine requires a petitioner to provide the state courts with "*one full opportunity*" to rule on his federal habeas claims before presenting those claims to the federal courts. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1991) (emphasis added). For Pennsylvania prisoners seeking federal habeas relief in a non-capital case, the exhaustion doctrine typically requires that the prisoner first must have presented his claims to the Common Pleas Court and then the Superior Court either on direct appeal or during PCRA proceedings. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Petitioner did not raise any of his federal habeas corpus claims on direct appeal. This Court will assume, without deciding, that he raised the claims in the PCRA proceeding before the Court of Common Pleas. However, because he did not appeal Judge Dunlavey's decision to deny PCRA relief, he did not provide the state court with a fair opportunity to rule on the claims and therefore he did not properly exhaust them. O'Sullivan, 526 U.S. at 844-45; Lambert, 387 F.3d at 233-34.

When a petitioner has failed to properly exhaust a claim, the federal district court should require that he return to state court and attempt to first litigate the claim there *if state procedural rules still permit him to raise the claim in state court.* Slutzker v. Johnson, 393 F.3d 373, 739-81 (3d Cir. 2004); Crews v. Horn, 360 F.3d 146 (3d Cir. 2004). However, when a petitioner would be barred under state law from raising a claim because he failed to comply with a state procedural rule, the Third Circuit Court has recognized that it would be "futile" to require the petitioner to return to state court. Under that circumstance, the Third Circuit Court has held that the petitioner is technically excused from having to comply with the exhaustion requirement, *but that the claims at issue are procedurally defaulted* because the federal court can confidently predict that the state court would decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 380-81 & 381 n.6 (internal quotation and citation omitted); Lines v. Larkin, 208 F.3d 153, 166 (3d Cir. 2000) (when exhaustion is futile, the claim is procedurally defaulted; "The equitable principles governing habeas relief will not permit [the petitioner] to create a situation in which seeking state post-conviction relief is futile, and then invoke that same futility to avoid the exhaustion requirement.")

Requiring Petitioner to return to the state court and pursue an appeal of the denial of PCRA relief to the Superior Court would be "futile" because the time period for filing an appeal has expired. See Pa.R.A.P. 903(a). Thus, because he did not avail himself of the opportunity to appeal Judge Dunlavey's decision and there is no remaining avenue for him to seek post-conviction relief in the state court, Petitioner has procedurally defaulted his federal habeas claims.

A petitioner can overcome a procedural default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). In this case, it appears that Petitioner is arguing that his appellate counsel's (either Attorney Weinraub's and/or Attorney Massella's) alleged failure to raise the claims at

7

issue here in the state court on direct appeal amounts to "cause" for his default. If Petitioner is making that argument, it is insufficient to sustain his burden of showing "cause" for his default.

First, an attorney's decision not to raise a claim on direct appeal is not the type of conduct that satisfies the "cause" requirement. As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim. *Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal*. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, *or failed to raise the claim despite recognizing it*, does not constitute cause for procedural default." [Murray v. Carrier, 477 U.S. at 486]. Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding. The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice. Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis added).

Second, while the Supreme Court has recognized that attorney error constituting ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984) can constitute "cause" for relief from a procedural default, Coleman, 501 U.S. at 753-54, Petitioner may not rely on appellate counsel's alleged ineffective assistance to avoid his default in this case. Concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the Supreme Court requires that "a claim of ineffective assistance of [appellate] counsel [must] be presented to the state courts as an independent claim before it may be used to establish procedural default." Murray, 477 U.S. at 488-89. This Petitioner failed to do because he did not properly exhaust a claim of ineffective assistance of direct appeal counsel in the state court.

Based upon all of the foregoing, Petitioner's habeas claims should be dismissed because the claims are procedurally defaulted.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a]

8

certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying this standard here, jurists of reason would not find it debatable whether the Petition for Writ of Habeas Corpus commenced by Petitioner was filed within the one-year limitations period which is provided for under AEDPA or whether Petitioner has procedurally defaulted his claims. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the instant Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

                                      /s/ Susan Paradise Baxter
                                      SUSAN PARADISE BAXTER
                                      Chief United States Magistrate Judge

Dated: June 27, 2008